IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

------------------------------------------------------------------------X

**JOHN DOE,**

                                                               **Plaintiff,**

– against –

**CLEMSON UNIVERSITY, CLEMSON UNIVERSITY BOARD OF TRUSTEES, JAMES P. CLEMENTS,** individually and as agent for Clemson University, **ALMEDA JACKS,** individually and as agent for Clemson University, **ALESIA SMITH,** individually and as agent for Clemson University, **SUZANNE PRICE,** individually and as agent for Clemson University, **LORETO JACKSON,** individually and as agent for Clemson University and **DAVID FROCK,** individually and as agent for Clemson University,

                                                            **Defendants.**

Civil Action No.: 8:16-cv-1957

------------------------------------------------------------------------X

**AFFIDAVIT OF ▇▇▇▇▇▇▇▇ IN OPPOSITON TO
DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT AND
IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO VOID SETTLEMENT IN
<u>PRINCIPLE AND REOPEN ACTION</u>**

STATE OF SOUTH CAROLINA   )
                                         ) ss.:
COUNTY OF BERKELEY        )

      ▇▇▇▇▇▇▇▇, being duly sworn, deposes and says:

1.    I am the mother of Plaintiff in the above-captioned action. As such, I am fully familiar with the facts set forth below. I submit this affidavit in opposition to Defendants' Motion to Enforce Settlement Agreement and in support of Plaintiff's Cross-Motion to Void Settlement in Principle and Reopen Action in the above-captioned matter.

2.    I attended the mediation on March 21, 2018, which lasted almost eleven (11) full

{1068096.4 }

hours.

3.      During the opening session of the mediation, the only time when all parties, their counsel, and the mediator were present, my son's former counsel provided a third-party professional review and analysis of a report that we personally commissioned showing the flaws, acts of negligence, and malpractice in Clemson's investigation and adjudication of the false allegations made against my son.  The professional group hired to prepare the report is the same company that drafted and assisted in the implementation of Clemson's investigation and adjudication procedure.

4.      As the mediation continued, mediator Bo Wilson and my son's counsel at that time regularly relayed promises communications made by Defendants.  We never met with Defendants' counsel after the opening statements and never observed or engaged in any negotiations.  We were forced to rely solely on Mr. Wilson and our son's former counsel for all information regarding the negotiations.

5.      Mr. Wilson and my son's former counsel indicated that Defendants stated there was "more to come" regarding a complete settlement of the case, including an agreement on the full expungement of Clemson's disciplinary findings from my son's education records and how Clemson would respond to any third-party questions regarding my son's disciplinary history.  My son's primary objective, which was communicated to Defendants' counsel and Mr. Wilson, was complete exoneration.

6.      Based on Defendants' representations that there was "more to come" regarding a complete settlement of this matter, my son, on the advice of counsel and at the behest of Mr. Wilson, signed a hand-written document to reflect the fact that the parties had reached an agreement in principle to settle the matter.

7. Prior to my son's signing of the hand-written document, we were repeatedly told by my son's former counsel and Mr. Wilson that we needed to take a "leap of faith" on the "gentlemen's handshake between legal professionals" regarding the expungement of the disciplinary records and Clemson's handling of third-party inquiries concerning my son's disciplinary history. This was communicated to me and my family consistently after Mr. Wilson and my son's former counsel returned from lengthy discussions with counsel for Defendants. The pledge of expungement to come was the understanding that formed the basis of the hand-written document.

8. The repeated entreaties from counsel and the mediator caused my son to suffer an emotional breakdown prior to signing the hand-written document. His deteriorating emotional state significantly impacted ongoing communications and should have alarmed Mr. Wilson and Defendants' counsel regarding the authenticity of all further negotiations. Instead, Mr. Wilson and Defendants' counsel used my son's compromised emotional state as an opportunity to rush negotiations and put forth the incomplete hand-written document that my son signed under duress.

9. The hand-written document does not include the promises made by Defendants to expunge Clemson's disciplinary findings from my son's academic records or any indication as to how Clemson will deal with questions related to my son's disciplinary history. I believed their word that there was "more to come."

10. At no point during the mediation did counsel for Defendants disclose that acceptance of funds from the South Carolina Insurance Reserve Fund would trigger the public's right to have access to otherwise confidential educational records. If full disclosure had been made to our son, he never would have signed the hand-written document.

11. Defendants, Defendants' counsel, Mr. Wilson, and my son's former counsel were

aware of my son's desire to attend medical school and knew that expungement and a plan for replying to questions related to my son's disciplinary history would be an integral part of any final settlement.

12.     My understanding was that there would be a further settlement document detailing the expungement process and Clemson's management of request for information regarding my son's disciplinary history.  This was especially the case because of my son's aspiration to attend medical school.

13.     On May 11, 2018, Defendants provided a document titled "Settlement Agreement and Mutual Release."

14.      The Settlement Agreement and Mutual Release includes a section labeled "Recitals" and at least sixteen (16) "Terms of Agreement" (not including sub-parts).

15.     The Settlement Agreement and Mutual Release it does not contain any language regarding the expungement of my son's educational records or how Clemson will respond to any inquiries regarding my son's disciplinary history.

16.     My son's current counsel provided counsel for Defendants with redlined, edited versions of the Settlement Agreement and Mutual Release to reflect the true terms of the arrangement reached at the mediation.

17.     On August 10, 2018, my son's current counsel met with Defendants in Columbia to engage in further negotiations in an attempt to finalize the settlement.  This negotiation was productive in my eyes and moved this matter closer to a settlement that would ultimately result in the expungement of my son's disciplinary history from his education records.  The non-final nature of the hand-written document is evidenced by the last six months of ongoing settlement discussions between the parties.

18. I always believed the promised expungement would be forthcoming. I had no reason to second-guess the protocol put forth by Mr. Wilson and counsel for Defendants at the mediation that additional parameters of the final settlement would be agreed upon a later point.

Sworn to before me on this
8 day of November 2018.

_____
Notary Public

[Notary Seal: THOMAS POMPOSELLI, NOTARY PUBLIC, SOUTH CAROLINA]